[Civ. No. 18506. Second Dist., Div. Three. Sept. 30, 1952.]

JOHN W. FISHER et al., Respondents, v. NASH BUILD-
ING COMPANY, INC. (a Corporation) et al., Defend-
ants; CHARLES TESSEYMAN, Appellant.

H. J. Kleefisch for Appellant.

A. V. Muller for Respondents.

VALLÉE, J.—Appeal by defendant Tesseyman from a judgment for plaintiffs in an action in which plaintiffs, as sellers, sought to recover from defendant Nash Building Co., Inc., a corporation, as buyer, the balance unpaid on the purchase price of plaintiffs' motel and its furnishings and fixtures. The only part of the judgment which affects Tesseyman is that which provides that his interest in the property is subordinate and subject to the prior lien claim and rights of plaintiffs. In addition to adjudging that plaintiffs recover from the buyer, the court ordered that all deeds and bills of sale, covering the real and personal property deposited in escrow, be retained by the escrow holder until "further order of the court." This provision was inserted because, as hereafter appears, the question of title as between Tesseyman and the Nash Building Co., Inc., was involved in the companion case of *Tesseyman* v. *Fisher, post,* p. 404 [248 P.2d 471]. The two judgments are entirely consistent with each other and for practical purposes should be read together as if they had been rendered in a single action.

Prior to March 23, 1949, plaintiffs and a Mr. and Mrs. Cleo S. Clinton were the owners of a motel. On that day they sold, and Nash Building Co., Inc., (called Nash Company) bought the motel, its furnishings and fixtures, and an on-sale liquor license, for $155,000. The terms of the sale are evidenced by escrow instructions, dated March 23, 1949, and signed by the buyer as follows: "Nash Building Co., Inc., a corp. By George H. Jovick, Pres. Approved Charles Tesseyman." The sum of $61,840.94 cash and a promissory note for $14,103.19 secured by a chattel mortgage, were deposited in the escrow. The balance of $79,055.87 was to be paid by the buyer on or before close of escrow and was to be disbursed to the sellers when the escrow holder obtained a deed to the real property showing title in the buyer and a bill of sale to it covering the furnishings and fixtures. Out of the money deposited, $7,500 was to be paid for the transfer of the liquor license which was to be in the name of Tesseyman, and $25,000 was to be paid to the Fishers and Clintons upon the signing of the escrow instructions.

On April 11, 1949, the escrow instructions were amended to provide that instead of paying $79,055.87 cash, called for under the instructions of March 23d, the buyer would, on or before August 15th, deposit $33,023.86 cash and assume a note and trust deed on the motel in the amount of $46,032.01. These amended instructions were signed by the buyer: "Nash Building Co., Inc. By George H. Jovick, Pres. Approved: Charles Tesseyman."

The terms of the escrow were fully performed by the sellers. They executed a deed and a bill of sale to the property in the name of the buyer, the liquor license was transferred to Tesseyman, and possession of the motel was delivered. The buyer, however, failed to pay the balance of $33,023.86 remaining on the purchase price, and prorations of taxes and fire insurance. The escrow has not been closed. Mr. and Mrs. Clinton quitclaimed to plaintiffs all their right, title and interest in the sale and the benefits under the escrow. On March 31, 1950, plaintiffs made written demand upon the buyer and Tesseyman to complete the performance of the terms of the sale, which they failed to do.

Thereafter, plaintiffs brought this action against Nash Company and others, including Tesseyman and Jovick, 1) to recover the balance due on the purchase price, prorations of taxes and fire insurance, interest, and costs, 2) to establish a lien on the property as security therefor, and 3) to have whatever interest defendants Tesseyman and Jovick claimed in the property decreed subordinate and subject to plaintiffs' prior lien. Jovick and Tesseyman were joined as parties defendant only for the purpose of having whatever interest they claimed in the property decreed subordinate to the interest of plaintiffs. The Nash Company and Jovick defaulted. Tesseyman answered. Among other things, his answer denied that his interest in the property was subordinate to plaintiffs' rights; admitted the escrow instructions and amendments thereto were known to him and were approved in writing by him. As a part of his answer, Tesseyman adopted "insofar as the allegations in the complaint . . . are applicable to the defense of this answering defendant [Tesseyman]," the allegations of the complaint in action 17745, filed in the Superior Court of San Luis Obispo County prior to the instant action, wherein he, as plaintiff, sued the Nash Company, Jovick, the Fishers, the Clintons, and others.[1]

---

[1] See *Tesseyman* v. *Fisher*, *post*, p. 404 [248 P.2d 471].

The complaint in 17745 is predicated on an alleged oral agreement between Tesseyman and Jovich with the Nash Company, the "intermediate title holder" or "dummy," to trade a hotel, then owned by Tesseyman, for the motel involved here, then owned by the Fishers and Clintons, together with an on-sale liquor license. Epitomized, the complaint in 17745 alleges that: Pursuant to this oral agreement, Tesseyman executed a deed and bill of sale covering the hotel and its furnishings to the Nash Company, which were placed in escrow, as were deeds and bills of sale relating to the motel from the Fishers and Clintons to Nash Company and from it to Tesseyman, for delivery to Tesseyman; relying upon representations made by Jovick that it was necessary in order to consummate the trade, Tesseyman authorized the escrow holder to record the deed and bill of sale relating to the hotel; thereupon, the Nash Company, through its officers, Jovick and Jacobsen, sold the hotel and furnishings; the proceeds derived therefrom, including a promissory note in the sum of $14,103.19, secured by a chattel mortgage on the hotel furnishings, were retained by defendants, including the Fishers and Clintons; the on-sale liquor license was transferred to Tesseyman, and with the knowledge and consent of the Fishers and Clintons, Tesseyman entered into possession of the motel property and, since March 25th, has been in actual possession; Tesseyman has paid certain sums to the holder of the trust deed and chattel mortgage on the motel on account of interest and principal; defendants claim an interest in the property which constitutes a cloud on Tesseyman's title; Tesseyman is entitled to receive title to the motel, but defendants refuse to deliver the conveyances until he has paid "a sum of money which he did not agree to pay and in no way is obligated to pay," as a "condition prerequisite" to the delivery of such conveyances; Tesseyman has been damaged by defendants' failure to deliver the conveyances.

Tesseyman moved to stay proceedings in the present action and to consolidate it with action 17745. The motions were denied.

After plaintiffs introduced their evidence and rested, and Tesseyman ·was testifying, objections to the testimony were made and sustained. Tesseyman then made several offers to prove 1) the source of the funds in escrow; 2) that he has paid the full consideration he had offered to pay for the property; 3) that Jovick was the agent of Fisher; 4) that he was induced to sign the escrow instructions upon Jovick's

representation that the transaction was a trade; 5) that the
sums of money in escrow were paid by him; 6) that Fisher
and Jovick delivered possession of the motel to him; 7) that
"practically two-thirds of the consideration was paid" by
him.

The offers were rejected as "not being proper at this time"
in view of the fact that it had been determined to keep the
two actions separate, and the facts included in the offer were
germane to action 17745, his rights would be protected in
that action, and, as appears by the court's remarks in the
margin,[2] he would be given an opportunity to present the
offered evidence at that time. Tesseyman then rested.

Judgment was rendered for plaintiffs. The judgment pro-
vides: 1) plaintiffs recover from Nash Company the amounts
sued for; 2) plaintiffs have a lien against the real and per-

[2]The Court stated: "[T]here are undoubtedly some rights to be deter-
mined as between Nash Building Company, Jovick and Mr. Tesseyman,
but I don't see how that concerns this case or Mr. Fisher's right to
enforce his escrow," and that when action 17745 came to trial, "it may
be shown that Mr. Tesseyman is entitled to the conveyance of this prop-
erty, or it may be shown that the Nash Building Company and Tesseyman
are entitled to certain respective interests in this real property. *That
is what we'll determine at that time,* but I don't see how that can be
urged against Mr. Fisher's right to have it paid for. . . . I don't see
anything in all of this documentary evidence and all of the testimony that
has been presented here that could cause the Court to consider seriously
that Mr. Tesseyman has any claim in greater priority to Mr. Fisher's.
. . . I am only concerned here as to the right to Mr. Fisher to enforce
his vendor's lien. . . . Mr. Tesseyman has no claim to this money that
is going to be paid Mr. Fisher. *The only thing that he [Tesseyman] is
concerned in is what his interest is going to be in this real property that
Mr. Fisher is going to deed when he gets the money.* He [Fisher] doesn't
care who he deeds it to. All he wants is his money, and here's the deed.
Then you people will then determine who is to get the deed, or what
interest each may have in this real property. . . . I'm going to exclude
all evidence, excepting any evidence—*that is in this trial*—excepting any
evidence that may tend to show why Mr. Tesseyman's claims in here
are paramount to Mr. Fisher's. And I don't know just how you're going
to do that, because he [Tesseyman] has approved all the escrow instruc-
tions, and that's all Mr. Fisher is insisting on is a compliance with the
escrow instructions. . . . I assure you your rights will all be protected
in the other case." (Italics and brackets added.) The following colloquy
took place: "THE COURT: Any decision I might make in that [this]
case would not affect the determination of the rights of Mr. Tesseyman
as against the Nash Building Company or Mr. Jovick. It would not
jeopardize or limit them. This Court will be ready to fully go into that.
If Mr. Tesseyman has interests and rights here, they will be protected.
. . . What you people will be fighting over will be who gets the title
and how much of it. MR. KLEEFISCH [Attorney for Tesseyman]: That's
right." The Court further said: "[B]ut it will be understood, of course,
that there will be something in this decree that will not permit this deed
to be delivered to the Nash Building Company until this other case
[17745] is disposed of."

sonal property as security therefor; 3) the premises be sold unless, within 60 days from notice of entry of judgment, defendant Nash Company pays the judgment; 4) any interest defendants Tesseyman and Jovick have in the real and personal property is subordinate and subject to the prior lien claim and rights of the plaintiffs; 5) all deeds and bills of sale covering the real and personal property theretofore placed in escrow be retained by the escrow holder until "further order of the Court." Tesseyman appeals.

We have had difficulty in deciphering appellant's points from his verbose briefs. They appear to be: 1) the court erred in denying the motions to stay proceedings and to consolidate the present action with action 17745; 2) the court erred in rejecting the offers of proof; 3) the complaint fails to state facts sufficient to constitute a cause of action against him; 4) the findings are defective; 5) the court should not have decreed a lien on the personal property.

In support of his contention that the court erred in refusing to stay proceedings in the present case and to consolidate the present action with action 17745, Tesseyman's argument appears to be that since a court of equity had obtained jurisdiction first over action 17745, and since the pleadings in that action were adopted and made a part of the pleadings in the present action, and vice versa,[3] consolidation was a matter of right. ▮ Consolidation is not a matter of right; it rests solely within the sound discretion of the trial judge, and his decision to consolidate, or his refusal to do so, will not be reviewed except upon a clear showing of abuse of discretion. (*Realty etc. Mtg. Co.* v. *Superior Court*, 165 Cal. 543, 546 [132 P. 1048].) Tesseyman makes no showing of either an abuse of discretion or of prejudice resulting from the court's determination to keep the two actions separate; nor can he do so in view of the record in both actions. The trial court thought it feasible to try the actions separately because the Nash Company, by its default admitted the money sued for was due, saying "there is this intermingling of the facts. We have the admission here that the money is due. They say they are ready to pay it. That clears out Mr. Fisher. Now, the question of where the title is to go is a matter between Nash and Jovick and Tesseyman. Fisher is not concerned about that." ▮ The issues which Tesseyman endeavored to inject into the present case by his pleadings, his offer of proof,

[3]See *Tesseyman* v. *Fisher, post,* p. 404 [248 P.2d 471].

and motion to consolidate were subsequently tried in action 17745, and there determined against him, which determination has this day been affirmed by this court.[4] Since the result would have been the same had the two actions been consolidated, he clearly suffered no prejudice.

There is no merit in Tesseyman's contention that the court erred in refusing his offers of proof. The court had determined to keep separate the issues involved in the two actions. The principal issue here was whether plaintiffs, as sellers, were entitled to recover from Nash Company, the buyer, the balance of the purchase price it had agreed to pay under the escrow instructions of March 23d and April 11, 1949. Since Nash Company permitted its default to be entered, the issue of its liability was settled. ▇ The only other issue was whether Tesseyman's interest in the property was paramount to plaintiffs'. The court permitted Tesseyman to offer evidence on this issue, but he was unable to do so in view of the escrow instructions approved by him. He concedes that the evidence offered by him related to events which occurred prior to the execution of the escrow instructions and was ''In the main . . . directed entirely to the questions as to the source of the moneys . . . deposited and disbursed . . .through the escrow.'' These were facts which could in no way affect plaintiffs' right to recover from the buyer under the escrow instructions. Since these facts were outside the issues, they were properly rejected. ▇ The fact that Tesseyman pleaded irrelevant matter in his answer did not make evidence with respect thereto admissible. Irrelevant matter, though pleaded, is still irrelevant. (*Decter* v. *Stevenson Properties, Inc.*, 39 Cal.2d 407, 419 [247 P.2d 11].)

▇ Tesseyman's contention that the complaint fails to state facts sufficient to constitute a cause of action against him is likewise groundless. The complaint states a valid cause of action against Nash Company. Tesseyman is not a necessary party to the determination of the respective rights of the plaintiffs as against the Nash Company under the escrow instructions. (20 Cal.Jur., 476, § 4.) Since, however, the complaint alleges that Tesseyman claims ''some interest in the real and personal property,'' but that his interest ''is subordinate and subject to plaintiffs' claim and right,'' it was proper, under the circumstances, to join him as a defend-

[4] See *Tesseyman* v. *Fisher, post*, p. 404 [248 P.2d 471].

ant, and in this respect, a cause of action against him is stated. (See *Reed* v. *Hayward,* 23 Cal.2d 336 [144 P.2d 561].)

 Tesseyman is the only party prosecuting this appeal. His appeal, therefore, is limited to that part of the judgment which affects his rights. (*Lasher* v. *Faw,* 209 Cal. 726, 734 [289 P. 821].) He is in no position to complain about any purported error in the form of the judgment or the purported inadequacy of the findings insofar as they affect the rights of plaintiffs as against Nash Company. Since it clearly appears from the record that the evidence supports the finding that his interest is subordinate and subject to the prior lien claim and rights of plaintiffs, the arguments advanced by Tesseyman on purported errors with respect to the rights and issues as between plaintiffs and defendant Nash Company are irrelevant.

Affirmed.

Shinn, P. J., concurred.

Wood (Parker), J., did not participate.

A petition for a rehearing was denied October 21, 1952, and appellant's petition for a hearing by the Supreme Court was denied November 25, 1952.